Good morning, counsel. Good morning, Your Honors. You may proceed when you're ready. Good morning, Your Honors, and may it please the Court. With the Court's permission, I'd like to reserve three minutes for rebuttal. Okay. Just keep track of your time. There are three areas I'd like to address this morning. First, the preliminary injunction should be vacated because the trial court erred as a matter of law in holding that the non-compete was enforceable. That caused the court to abuse its discretion when applying the data phase factors and calls for vacation of the preliminary injunction. Second, the court erred in ordering Mr. Dawes to transfer over $500,000 in cash to J.D.T. as a form of injunctive relief when there is an adequate remedy at law that was not available. So that was improper injunctive relief. Third, the court erred in failing to require J.D.T. to post an adequate surety to secure the injunction. For example, the $500,000, the court required zero bond for that. This case really, at the heart of this case, is the non-compete, and it is incredibly broad. It's contained in an asset purchase agreement, and it provides as follows. The appellants, Dawes, Inc., Jim, and Lana Dawes, quote, shall not either directly or indirectly carry on or engage in either as an owner, part owner, manager, operator, employee, agent, or other participant in the business of trucking in the continental United States of America for a period of no less than five years. That is incredibly broad, and importantly, under Nebraska law, it is greater than reasonably necessary to protect J.D.T.'s legitimate business interest and the business that it purchased. The court, let's start with the data phase factors. I'm sure the court is aware of them, but there's four factors that the court had to look at before entering an injunction. The probability that the movement would succeed on the merits, the threat of irreparable harm to the movement, the balance of the harms, the weighing of those, and the public interest. And while no single factor is determinative, the probability of success factor is the most significant. And in this case, the district court erred in holding that J.D.T. was likely to succeed on the merits because as a matter of Nebraska law, the non-compete is unenforceable. Under Nebraska law, whether a non-compete is enforceable is a question of law. That's Mertz versus pharmacist mutual. And the Nebraska Supreme Court has long recognized that contracts and restraint of trade, all contracts, are against public policy and void with a narrow exception. The court has carved out a narrow exception for a sale of a business because in Presto X, the court recognized that a buyer has a legitimate need when they purchase a business to reasonably protect himself against competition from the seller. But to be enforceable under that rubric, it has to meet all three of the following elements. The restriction must be reasonable in the sense that it is not injurious to the public. It has to be no greater than reasonably necessary to protect the buyer's legitimate business interest. And it can't be unduly harsh or oppressive. That's unlimited opportunity versus WADA. This non-compete, the non-compete that I read, the incredibly broad one, fails all three of those tests. And under Nebraska law, if a non-compete is unenforceable in any circumstance, it is unenforceable in every circumstance. The courts are not allowed to blue line a non-compete or modify it. It has to be enforced as written. And so effectively, it's a pass-fail test. And this one fails. Mr. Talke, what about the additional language that seems to maybe narrow the scope of the covenant so long as the buyer carries on a like business in such area? Well, both the plaintiff below and the court essentially ruled that that is a... I don't know if the court ruled this, but the plaintiff certainly argued that that is a durational limit, that it only applies to the time frame. And so it is not a scope limit. So I think they've forfeited any argument that it's narrower than it is. Like business would seem to maybe limit it to flatbed trucking. If that's the case, then the injunction is wrong. The injunction is way broader than that. Exactly. It prevents my client from engaging in the business of trucking anywhere in the United States. So the question, Your Honor, that you're getting at is...  Yes. Do you agree that under Nebraska law, there's courts more willing to uphold a non-compete where it stems from the sale and purchase of goodwill? Yes. And here you've got a $12 million purchase price and about a third of it was apportioned to goodwill. So doesn't that really support the court's broad view of the non-compete? No, in the sense that... I agree, the courts do look at sales of business differently. However, it still has to meet those three tests, that it can't be greater than reasonably necessary to support legitimate business interests. And as Judge Graz was getting at, what is the legitimate business interest here? Well, you can look at the APA and it tells you. Because this is what JDT bought. This is at the addendum page 23. Dawes, Inc., which was the predecessor company, it owns and operates a trucking company specializing in hauling over-the-road flatbed freight. The business. That's the business JDT bought, a flatbed freight trucking company. The non-compete goes way beyond that. Further confirming that, at the addendum 31, Mr. Fernandez, who owns JDT, the purchaser, said during the TRO hearing, Jim Dawes Trucking Company is a flatbed trucking company as they described. It's in the business of hauling specialized flatbed freight. That's the business they bought. That's the interest they have in protecting. This non-compete goes way beyond that. It says my client can't engage in trucking, the business of trucking, whatever that is, anywhere in the continental United States. That is contrary to Nebraska law in Antrim v. Pittman. In that case, the court held in the sale of a business, the restraining promise is illegal as to lines of trade other than those sold by the party whom the covenant restrains. If you look at the non-compete, it treats the business of trucking as a monolith. The reality is there are different lines of trucking. There's flatbed trucking, which is what JDT does. You can haul tankers. You can haul dry vans. You can haul refrigerated vans or reefers and livestock. But what the evidence, the undisputed evidence in this case is, is that JDT did none of those. It didn't haul tankers, dry vans, or reefers, or livestock. Yet the non-compete bars my clients from engaging in any of those lines of trade. That's illegal under Nebraska law. I would cite to the court to the addendum at 3233, the testimony of Mr. Fernandez, when I asked him, question, the business you bought was a specialty flatbed trucking company, correct? The answer, correct. So if a trucking business is hauling a reefer, it is not in competition with JDT. Is that true? That's true. And if a trucking company is hauling livestock, that is not in competition with JDT, is it? If a company is hauling livestock, it's not in competition with JDT. So those are clear admissions by the owner of the buyer that JDT, these actions that my client's been restraining from doing, don't compete with JDT. That means that this non-compete and the injunction are greater than reasonably necessary. To protect the interest. It even goes farther than that. This injunction and the non-compete purports to prohibit my client from even driving a truck. Judge Bezos confirmed that in a post-trial hearing. He can't drive a truck anywhere in the United States, even if it's not in competition. He can't own stock in a trucking company, because that would be in ownership of the business of trucking. Way too broad. Is the problem that the injunction needs to be narrowed, or that the covenant is invalid under Nebraska law? Our position is that the covenant is invalid under Nebraska law, based on the position that the plaintiffs took, which is that it bars him from engaging the truck. Who drafted it? It was drafted by a lawyer named Julie Karabas, and the testimony at the TRO hearing is that she was representing both of the parties at the time. There's also testimony that the buyer, JDT, had their own counsel. I don't think who drafted it really has any bearing on the resolution. What was the finding of the district court as to who drafted it? I don't remember if there was a finding on that. I think there is a... Clearly, Julie drafted it. Julie Karabas drafted it. Who she drafted it on behalf of, I think, is a little bit murky. Is that a lawyer? She's a lawyer, yes. Are you saying she was representing both parties? That's the position JDT has taken, that she was representing both parties in the drafting. In fact, not in the record, but the court can take judicial notice, JDT has filed a legal malpractice action against her in state court. Obviously, they're taking the position she was their lawyer. Because the non-competes greater than necessary to protect JDT's legitimate interests, it's invalid and unenforceable. It's also unduly harsh and oppressive. Think about the scope. Jim can't drive a truck. Under Moore v. Eggers, an employer does not ordinarily have a legitimate business interest in post-employment preclusion of an employee's use of some general skill. Driving a truck is a general skill. He's effectively prohibited from engaging in an entire industry in the use of his general skill. It's unduly harsh in geography. The evidence is 70% of JDT's business was within 300 miles of Lincoln. This is a continental-wide ban, way too broad. Time frame, a five-year ban on Jim driving a truck or owning stock, no reason for that, especially when he's driving for a company that isn't competing with JDT. Well, I'm looking at the order. The court said that Jim's attorney drafted the non-compete on page 11. Is that wrong? I don't disagree. Again, Julie Karabas drafted the document. She was Jim's lawyer. However, JDT took the position at the preliminary injunction hearing that she was also representing JDT. And what are we supposed to draw from that? I mean, that becomes complicated because ordinarily, you know, somebody drafts it, it's construed against whoever drafted it. Now you've got the other side saying, well, represented both parties and apparently has some kind of claim for malpractice that they've presented, you know, in addition there too, which seems to muddy the waters even more. I think it's irrelevant who drafted it. I don't think that this is a contra profferentum issue. The reality is, again, it's in the APA. You can see it. They're also listed. JDT has their lawyers listed in there as well. I think the testimony was they came in at the end. So I don't think contra profferentum applies here. Very good. Thank you. If the non-compete was determined to be invalid, how should we deal with the breach of duty of loyalty claim? I think the result of that is a remand. And if the court wants to take it up and address that issue separately, it can. But I don't think you order it. What would the remedy be for a successful claim? Monetary or equitable? Of a breach of loyalty? I think it would have to be monetary because I don't think the loyalty, I mean, Jim left the company. And so his duty of loyalty is gone at this point. Did the district court make some findings about some activities of Mr. Dawes when he left? He stayed on after the deal was concluded, but then he left. Does the district court make some findings about some things that he did in connection with leaving as far as persuading others to follow him? Taking a server? I don't know. Yeah, the server was actually Mr. Fernandez, who is JDT's owner. He came in and removed the server, which shut down the phones, which caused a whole bunch of problems. But didn't the court find that Mr. Dawes had taken some actions as far as trying to persuade employees to follow him and to leave the Apple East? That certainly was the allegation. I don't know that the court made a finding that he actually completed that. I think there's a lot of, again, confusion as to that. Well, if he did, wouldn't that be relevant to this non-compete from the standpoint of reputation of Mr. Dawes in the nationwide trucking business and influence that he has in that industry? Even exceeding influence in the flatbed hauling market. I don't think so. I mean, again, the issue is competition. And so I don't think that, you know, again, the testimony from everybody who left said Jim had nothing to do with me leaving. And I'm way into my rebuttal. I don't think it matters. Is that your answer? Yes. Okay. Mr. Berry. Good morning, Your Honors. May it please the Court, my name is Andy Berry. My colleague, Maddie Hasley, and I represent Jim Dawes Trucking, LLC, which I'll refer to today as JDT. The Court's decision in Cigna controls this appeal and requires that Judge Bezos's decision to grant a preliminary injunction be affirmed. In Cigna, the Court emphasized the broad discretion accorded to a district judge in granting or denying a preliminary injunction, especially given the district judge's greater familiarity with the facts and the case. That holding is particularly apt here. Judge Bezos opened her memorandum opinion and order by observing, over the course of several days in the courtroom, the parties presented a tremendous amount of information. For purposes of brevity, the Court will not restate or summarize all the evidence heard. Instead, the Court will highlight the points relevant to its findings in this memorandum and order. Make no mistake, all evidence and arguments have been considered. Under Cigna, not only is Judge Bezos's decision reviewed for abuse of discretion, but her exercise of that discretion is viewed through what this Court called the prism of the winter data phase factors. That prism recognizes that Judge Bezos did not make a final determination as to the enforceability of the non-compete. She made a prediction as to whether it is likely to be enforceable. Under this Court's application of the data phase factors, that doesn't even require a more than 50% chance of success. The question is, is there a fair chance of prevailing on the non-compete? Nebraska case law also recognizes that the enforceability of a non-compete depends on all of the facts before the Court. The judge had some of the facts. This was a preliminary injunction hearing. But she's making a prediction based on what she's heard at the preliminary injunction hearing, what she's seen of the witnesses, of what the final decision in the case is going to be. And under Cigna, that decision gets a huge amount of deference. Let's look a little deeper into the fair chance of success on the merits. You agree in your brief, as you must, that under Nebraska law, the covenant has to be no greater than necessary to protect the legitimate business interests of GDT. The one qualification I would make to that, Your Honor, is that it's clear from the H&R Block case, the standard is no greater than reasonably necessary. So it doesn't have to be perfectly tailored to every place or time in which there would be goodwill. So it's a reasonableness. So if a non-compete forbids someone from engaging in a line of business in which they were not engaged, isn't that greater than reasonably necessary to protect their business interests by definition? And what I'm getting at here is all trucking in the world versus flatbed trucking. Right. And so the geographic restriction here is the continental 48 United States, not the world. But in terms of the lines of business, Your Honor, if you look at the Antrim case, it's interesting. There's a part of that case that appellants don't cite that touches on this issue, different lines of business. And if they're somewhat intermingled such that the non-compete needs to be broader so that competition in one line doesn't affect the core business, then that can be reasonable. If Mr. Dawes wanted to start a reefer trucking company or a livestock hauling company, would that be forbidden by this covenant? It would be forbidden by this covenant. So why is it reasonably necessary to protect a flatbed trucking company? Sure. The point of the non-compete in the context of the sale of a business is to ensure that all of the goodwill gets transferred. This contract was for, I mean, the parties agreed that $4.5 million was the value of the goodwill. Aren't you assuming that there's goodwill beyond the flatbed trucking company? I would think that all the goodwill would be from the flatbed trucking company. Well, so two points on that, Your Honor. One, the contract doesn't say that Dawes Trucking is restricted to flatbed trucking. It says specializes. That's a point of emphasis. And then Judge Bezos' findings were that the goodwill wasn't restricted to flatbed trucking, that the goodwill is synonymous with Jim Dawes, which after all, that's the name. I mean, his business was Dawes Trucking. The name of the LLC is Jim Dawes Trucking LLC. Those two things are synonymous. So that's Judge Bezos' finding, and there's no argument on appeal that that was clearly erroneous. And I don't think it is clearly erroneous when you look at all of the facts, all of the testimony uniformly, whether it's Jim Dawes or Lana Dawes or Jeremy Becker. They talk about Jim's reputation as an industry giant, as someone with a great reputation in the industry of trucking. In terms of transferring that goodwill, if Jim is still out there hauling reefers, and that's known, he's an industry giant, he's not out of the trucking industry. How does that hurt your client? It hurts my client because at the end of the five years, all that goodwill is supposed to be transferred. And I think the facts of this case show what Jim Dawes was trying to do was ensure the continuation of his business. Right now, he's just trying to wait out the non-compete. If Jim Dawes stays in the business of trucking, and everyone knows Jim Dawes is still around, either personally or through others, whether it's a refrigerated trailer or a dry van or whatever it is, he's still engaged in the business of trucking. His reputation is still out there, and there's confusion as to what Jim Dawes trucking really is. As you interpret the restrictive covenant, could he even own stock in a nationwide trucking company? I believe that he could. I don't see anything in the restrictive covenant that prevents him from doing that. Restrictive covenant requires… Isn't that ownership in a trucking company? But it's not engagement or participation. So I think the restrictive covenant requires active participation. We can't blue pencil in Nebraska. We can't, but I would say the flip side of the blue penciling is there have been a handful, a smattering of cases cited from states other than Nebraska by appellants with carve-outs for publicly traded stock ownership. I'm not aware of non-competes in Nebraska. I haven't seen any with carve-outs for publicly traded stock ownership. If that's the holding in this case as a matter of law, that there has to be a carve-out, there will be many, many non-competes in the state of Nebraska that are invalid. Well, it depends on how broadly they're written. Well, if it prohibits ownership or engagement, there's going to be a serious question about whether they're enforceable. And I don't think it's required to get to that question because this non-compete requires engagement and participation. And we've never contended otherwise. I would also note that the testimony from Rick Fernandez is not as – the appellants leave out some testimony from Mr. Fernandez as to the interchangeability of the lines of business. So Mr. Talkin asked Mr. Fernandez, so you can put a tanker on a flatbed? Mr. Fernandez said, yes, sir, we do it all the time. That's at page 796 of the transcript. He asked Mr. Fernandez to agree that hauling dry vans is not in competition with JDT. Mr. Fernandez said, no, I can't agree to that. If a customer can put it on a container and put it on a flatbed, it's in competition. And then later on, just in general, he said JDT was a trucking company. It does trucking, not just flatbeds. It could do whatever it wants. So I do think that in particular, Jim Dawes' reputation, his personal reputation is key to this case in Judge Bezos' prediction that the non-compete ultimately will be enforceable. And of course, that's not the only factor. There's also irreparable harm, the public interest, and the balancing of the factors. On the issue of irreparable harm, there was tremendous evidence of irreparable harm to JDT. Destruction of the value of the goodwill that was purchased. Confusion in the marketplace as to who the real JDT is. Undermining JDT, making it extremely difficult for JDT to even remain in business as a result of the actions that Jim Dawes took. And I think it bears noting that the violation of the non-compete here, it's not one of these things at the periphery that are raised in hypotheticals. This isn't Jim Dawes wanting to pull a dry van in Montana. He left Jim Dawes Trucking with a calculated plan to take the business that he had sold for $12 million in value, $8 million in cash, $4 million promissory note, including $4.5 million in goodwill. And his plan was to start a competing business in the same exact location with the same drivers, most of the same employees, for the same customers. And when he did that, to some extent, part of the competition was competition for drivers, not just competition for customers, because you need drivers to generate revenue. And there's ample evidence in the record that Jim was trying to persuade drivers not to drive for JDT and arranging other work for them in the meantime, including hauling refrigerated trailers outside the state of Nebraska, in the continental 48 United States. So Judge Bezos had ample evidence before her to make a prudential decision that this non-compete, that there's a fair chance of success on the non-compete, and that there is irreparable harm. The argument that's raised below is that, well, there can't be any irreparable harm if the non-compete isn't valid. That was not raised below. The place where the court can see that is in the Appellee's Appendix at pages 82 and 83. So that's a new argument on appeal. And another critical factor in the Cigna case that came before the court, that also was a nationwide non-compete. And that was also a case where the court emphasized the importance of this layered standard of review. Part of the Cigna case was emphasizing the public interest and there aren't any Nebraska cases. The Nebraska cases, I would say the gist of them favor an interpretation that in the sale of a business, the temporary removal of somebody from the marketplace isn't seriously injurious to the public interest. In this case, it's not oppressive to Jim. He's been paid, we had a debate because part of the consideration was in a promissory note that wasn't fully paid off when everything blew up. But between $10 and $12 million for the business, $4.5 million of which was allocated to a promissory note. There's nothing oppressive about abiding by the agreement that he made. And then going back to Cigna, in Cigna the court said, there's a public interest in enforcing contracts according to their terms. Finality in that. Certainty in doing that. So enforcing contracts as written. And Judge Bezos made a similar finding in her weighing of the factors here. I want to make a quick note of caution in terms of judicial notice of the legal malpractice cause of action. I don't know whether there's an allegation even in the legal malpractice cause of action related to the drafting of the non-compete agreement. My understanding of that case is it has more to do with Julie Karabas representing both Jim and J.D.T. at the time Jim left J.D.T. in September. So I don't want to make a representation one way or the other, but I want to be cautious about just assuming that that's an allegation in that case. Well, the district court found that it was drafted by the attorney for the seller. That's right. At the end of the day, that was Judge Bezos' finding here. All right. I think that's all I have, Your Honors, unless you have additional questions for me. All right. I think not. Thank you very much. Thank you very much. All right. Counsel, we'll hear your rebuttal. Thank you, Your Honor. Clearly, we raised the issue of no irreparable harm below. I mean, the abuse of discretion standard under CIGNA that applies to this is that it's an abuse of discretion if the court gives significant weight to an irrelevant or improper factor. Our position is that the court gave almost overwhelming weight here to the enforceability of the non-compete, and so no irreparable harm. If the non-compete's not enforceable, there's no irreparable harm here in enforcing an unenforceable non-compete. Balance of the harms. Clearly, that weighs in favor of my client because if the non-compete's not enforceable, then there's no harm in not enforcing it. My client is harmed if an unenforceable non-compete is enforced against him. Public interest. The court held the public has an interest in supporting contractual obligations, but it doesn't have a public interest in supporting unenforceable contractual obligations. So all of this flows from the enforceability of the non-compete, and it caused the court to abuse its discretion in entering the preliminary injunction.